201753128 - TAUPO, DENNIS vs. METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS (Court 333)

Chronological History   Print All *(non-financial)*

| Summary | Appeals | Cost Statements | Transfers | Post Trial Writs | Abstracts | Parties |
| Court Costs | Judgments/Events | Settings | Services/Notices | Court Registry | Child Support | Images |

↻ Click column headings to sort. Click again to toggle direction.

Print Events

| Date | Description | Order Signed Date | Post Jdgm | Pages | Volume/Page | Filing Attorney | Person Filing |
|------|-------------|-------------------|-----------|-------|-------------|-----------------|---------------|
| 9/5/2017 | ANSWER ORIGINAL PETITION | | | | | CONDER, DENNIS D | METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS |
| 8/10/2017 | JURY FEE PAID (TRCP 216) | | | | | | |
| 8/10/2017 | ORIGINAL PETITION | | | | | WILSON, CHAD T | TAUPO, DENNIS |

[W55]



EXHIBIT
tabbies
A

# 2017-53128 / Court: 333

8/10/2017 9:01 AM
Chris Daniel - District Clerk Harris County
Envelope No. 18751750
By: Lewis John-Miller
Filed: 8/10/2017 9:01 AM

CAUSE NO. _____

| | | |
|---|---|---|
| **DENNIS TAUPO,** | § | **IN THE DISTRICT COURT** |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| **METROPOLITAN LLOYDS** | § | |
| **INSURANCE COMPANY OF TEXAS** | § | |
| **Defendant.** | | _____ **DISTRICT COURT** |

## PLAINTIFF'S ORIGINAL PETITION, JURY DEMAND, AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Dennis Taupo, Plaintiff herein, and files **Plaintiff's Original Petition, Jury Demand, and Request for Disclosure**, complaining of Metropolitan Lloyds Insurance Company of Texas ("MetLife" or "Defendant") and for cause of action, Plaintiff respectfully shows the following:

### DISCOVERY CONTROL PLAN

1.  Plaintiff intends to conduct discovery under Level 3, Texas Rules of Civil Procedure 190.4 and 169.

### PARTIES

2.  Plaintiff, Dennis Taupo, resides in Harris County, Texas.

3.  Defendant, Metropolitan Lloyds Insurance Company of Texas, is a Texas insurance company engaged in the business of insurance in the State of Texas. Plaintiff requests service of citation upon Metropolitan Lloyds Insurance Company of Texas through its registered agent, **CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136**. Plaintiff requests service at this time.

## JURISDICTION

4.     The Court has jurisdiction over Metropolitan Lloyds Insurance Company of Texas because Defendant engages in the business of insurance in the State of Texas, and the causes of action arise out of MetLife's business activities in the State of Texas, including those in Harris County, Texas, with reference to this specific case.

## VENUE

5.     Venue is proper in Harris County, Texas because the insured property is located in Harris County, Texas, and all or a substantial part of the events giving rise to this lawsuit occurred in Harris County, Texas. TEX. CIV. PRAC. & REM. CODE § 15.032.

## FACTS

6.     Plaintiff asserts claims for fraud, breach of contract, violations of sections 541 and 542 of the Texas Insurance Code, and violations of the Texas DTPA.

7.     Plaintiff owns a Metropolitan Lloyds Insurance Company of Texas homeowner's insurance policy, number 4362815720 ("the Policy"). At all relevant times, Plaintiff owned the insured premises located at 12907 Shady Knoll Lane, Cypress, Texas 77427 ("the Property").

8.     MetLife or its agent sold the Policy, insuring the Property, to Plaintiff. MetLife represented to Plaintiff that the Policy included wind and hailstorm coverage for damage to Plaintiff's home. MetLife has refused the full extent of that coverage currently owed to Plaintiff.

9.     On or about January 2, 2017, the Property sustained extensive damage resulting from a severe storm that passed through the Harris County, Texas area.

2

10.   In the aftermath of the wind and hailstorm, Plaintiff submitted a claim to MetLife against the Policy for damage to the Property.  MetLife assigned claim number JDG50948 to Plaintiff's claim.

11.   Plaintiff asked MetLife to cover the cost of damage to the Property pursuant to the Policy.

12.   MetLife assigned or hired its agent to adjust the claim.

13.   MetLife, through its agent, conducted a substandard and improper inspection and adjustment of the Property, which yielded grossly inaccurate and unrealistic assessments of the cause, extent, and dollar amount of damage to the Property.

14.   MetLife hired or assigned its agents, namely Rodney Thomas, to inspect and adjust the claim. Thomas conducted an inspection on or about May 19, 2017, according to the information contained in the denial letter.  Thomas' estimate failed to uncover any direct physical loss to the Property. Therefore, Plaintiff was left without the necessary recovery to make repairs on the entirety of their claim.

15.   MetLife has ultimately refused full coverage which includes, but is not limited to, replacement of the roof and additional exterior damage. As stated above, Thomas claims that the damage to the Property was the result of blisters, granule loss, and mechanical damage, and not a direct physical loss. However, the third-party inspector hired to review the damage to the Property found $22,832.37 of storm related damage to 35 squares of Plaintiff's roof. In addition, the third-party inspector found damage to the asphalt starter, valley metal, drip edge, 20" flashing, pipe jack flashing, patio cover, and the gutters and downspouts that were completely absent from Thomas' estimate.

3

16.     The damage to Plaintiff's Property is currently estimated at $36,853.18.

17.     Since due demand was made on or about June 9, 2017, MetLife has not communicated that any future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did it provide any explanation for failing to settle Plaintiff's claim properly.

18.     As stated above, MetLife failed to assess the claim thoroughly. Based upon MetLife's grossly unreasonable, intentional, and reckless failure to investigate and adjust the claim properly, MetLife failed to provide full coverage due under the Policy.

19.     As a result of MetLife's failure to provide full coverage, along with MetLife's delay tactics to avoid reasonable payment to Plaintiff, Plaintiff has suffered damages.

20.     MetLife failed to perform its contractual duties to Plaintiff under the terms of the Policy. Specifically, MetLife refused to pay the full proceeds of the Policy, although due demand was made for an amount sufficient to cover repairs to the damaged Property, and all conditions precedent to recover upon the Policy were accomplished by Plaintiff.

21.     Defendant's misrepresentations, unreasonable delays, and continued denials constitute a breach of the statutory obligations under Chapters 541 and 542 of the Texas Insurance Code. Thus, the breach of the statutory duties constitutes the foundation of a breach of the insurance contract between MetLife and Plaintiff.

22.     MetLife's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(1). MetLife has not attempted to settle Plaintiff's claim in a fair manner, even though MetLife was aware of their liability to Plaintiff under the Policy. Specifically, MetLife has failed to timely pay Plaintiff's

4

coverage due under the Policy.

23.   MetLife's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a)(2)(A).  MetLife failed to provide Plaintiff a reasonable explanation for not making the full payment under the terms of the Policy.

24.   MetLife's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a)(4)..  MetLife refused to provide full coverage due to Plaintiff under the terms of the Policy.  Specifically, MetLife, through its agents, servants, and representatives, performed an outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's losses on the Property.

25.   MetLife's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE §542.055.  MetLife failed to reasonably accept or deny Plaintiff's full claim within the statutorily mandated time after receiving all necessary information.

26.   MetLife's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE §542.056.  MetLife failed to meet their obligations under the Texas Insurance Code regarding timely payment of the claim.  Specifically, MetLife has delayed payment of Plaintiff's claim longer than allowed, and Plaintiff has not received full payment for his claim.

27.   Defendant's wrongful acts and omissions forced Plaintiff to retain the professional services of the attorneys and law firm representing him with respect to these causes of action.

5

## CAUSES OF ACTION AGAINST DEFENDANT
## METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS

28.     All paragraphs from the fact section of this petition are hereby incorporated into this section.

### BREACH OF CONTRACT

29.     MetLife is liable to Plaintiff for intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing. It follows, then, that the breach of the statutory duties constitutes the foundation of an intentional breach of the insurance contract between MetLife and Plaintiff.

30.     MetLife's failure and/or refusal to pay adequate coverage as obligated under the terms of the Policy, and under the laws of the State of Texas, constitutes a breach of the insurance contract with Plaintiff.

### NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE:
### UNFAIR SETTLEMENT PRACTICES

31.     MetLife's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a). All violations under this article are actionable by TEX. INS. CODE §541.151.

32.     MetLife's unfair settlement practice of misrepresenting to Plaintiff material facts relating to coverage constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

6

33.   MetLife's unfair settlement practice of failing to attempt in good faith to make a prompt, fair, and equitable settlement of the claim, even though liability under the Policy was reasonably clear, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

34.   MetLife's unfair settlement practice of failing to provide Plaintiff a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for underpayment of the claim, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

35.   MetLife's unfair settlement practice of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(4).

36.   MetLife's unfair settlement practice of refusing to pay Plaintiff's claim without conducting a reasonable investigation constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(7).

### NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: THE PROMPT PAYMENT OF CLAIMS

37.   MetLife's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims.  All violations made under this article are actionable by TEX. INS. CODE §542.060.

38.   MetLife's failure to notify Plaintiff in writing of its acceptance or rejection of the full claim within the applicable time constraints constitutes a non-prompt payment in violation of TEX. INS. CODE §542.056.

7

39.   MetLife's delay in paying Plaintiff's claim following receipt of all items, statements, and forms reasonably requested and required, for longer than the amount of time provided, constitutes a non-prompt payment of the claim.  TEX. INS. CODE §542.058.

## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

40.   MetLife's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to an insured in insurance contracts.

41.   MetLife's failure to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, MetLife knew or should have known by the exercise of reasonable diligence that liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## DTPA VIOLATIONS

42.   MetLife's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.41–63.  Plaintiff is a consumer of goods and services provided by MetLife pursuant to the DTPA.  Plaintiff has met all conditions precedent to bringing this cause of action against Farmers.   Specifically, MetLife's violations of the DTPA include, without limitation, the following matters:

A.    By its acts, omissions, failures, and conduct, MetLife has violated sections 17.46(b)(2), (5), (7), (9), (12), (20) and (24) of the DTPA.  MetLife's violations include without limitation, (1) unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claim, (2) failure to give Plaintiff the benefit of the doubt, and (3) failure to pay for the proper repair of Plaintiff's

8

property when liability has become reasonably clear, which gives Plaintiff the right to recover under section 17.46(b)(2).

B.    MetLife represented to Plaintiff that the Policy and MetLife's adjusting and investigative services had characteristics or benefits that they did not possess, which gives Plaintiff the right to recover under section 17.46(b)(5) of the DTPA.

C.    MetLife also represented to Plaintiff that the Policy and MetLife's adjusting services were of a particular standard, quality, or grade when they were of another, in violation of section 17.46(b)(7) of the DTPA.

D.    Furthermore, MetLife advertised the Policy and adjusting services with the intent not to sell them as advertised, in violation of section 17.46(b)(9) of the DTPA.

E.    MetLife breached an express warranty that the damages caused by wind and hail would be covered under the Policy.  This breach entitles Plaintiff to recover under sections 17.46(b)(12) and (20) and 17.50(a)(2) of the DTPA.

F.    MetLife's actions are unconscionable in that MetLife took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree.  MetLife's unconscionable conduct gives Plaintiff a right to relief under section 17.50(a)(3) of the DTPA; and

G.    MetLife's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

43.    Each of the above-described acts, omissions, and failures of MetLife is a producing cause of Plaintiff's damages.  All of the above-described acts, omissions, and failures were

9

committed "knowingly" and "intentionally," as defined by the Texas Deceptive Trade Practices Act.

## FRAUD

44. MetLife is liable to Plaintiff for common law fraud.

45. Each and every misrepresentation described above concerned material facts that absent such representations, Plaintiff would not have acted as he did, and MetLife knew its representations were false or made recklessly without any knowledge of their truth as a positive assertion.

46. MetLife made the statements intending that Plaintiff act upon them. Plaintiff then acted in reliance upon the statements, thereby causing Plaintiff to suffer injury constituting common law fraud.

## KNOWLEDGE

47. Defendant made each of the acts described above, together and singularly, "knowingly," as defined in the Texas Insurance Code, and each was a producing cause of Plaintiff's damages described herein.

## WAIVER AND ESTOPPEL

48. Defendant waived and is estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to Plaintiff.

## DAMAGES

49. Since the claim was made, MetLife has not properly compensated Plaintiff for all necessary repairs made, which are covered under the Policy. This has caused undue

hardship and burden to Plaintiff. These damages are a direct result of MetLife's mishandling of Plaintiff's claim in violation of the laws set forth above.

50.     Defendant made the above and other false representations to Plaintiff, either knowingly or recklessly, as a positive assertion, without knowledge of the truth. Defendant made these false misrepresentations with the intent that Plaintiff act in accordance with the misrepresentations. Plaintiff then relied on these misrepresentations, including but not limited to those regarding coverage and the cause and scope of damage. Plaintiff suffered damages as a result.

51.     Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of damages sustained. The acts, omissions, failures, and conduct of Defendant has caused Plaintiff's damages, which include, without limitation, costs for all necessary repairs required to be made to Plaintiff's Property, and any investigative and engineering fees incurred.

52.     For breach of contract, Plaintiff is entitled to regain the benefit of his bargain, which is the amount of his claim, consequential damages, together with attorney's fees.

53.     The damage to Plaintiff's Property is estimated at $36,853.18.

54.     For noncompliance with the DTPA and Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits owed pursuant to the Policy, court costs, and attorney's fees. For knowing and intentional conduct of the acts described above, Plaintiff asks for three (3) times his

actual damages.   TEX. INS. CODE §541.152 and TEX. BUS. & COM. CODE 17.50(B)(1).

55.     For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of his claim, plus an eighteen percent (18%) per annum penalty on that claim, as damages, as well as pre-judgment interest and reasonable attorney's fees. TEX. INS. CODE §542.060.

56.     For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from Defendant's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of money MetLife owed, and exemplary damages.

57.     Defendant's breach of the common law duty of good faith and fair dealing was committed intentionally, with a conscious indifference to Plaintiff's rights and welfare, and with "malice," as that term is defined in Chapter 41 of the Texas Civil Practices and Remedies Code.   These violations are the type of conduct which the State of Texas protects its citizens against by the imposition of exemplary damages.  Therefore, Plaintiff seeks the recovery of exemplary damages in an amount determined by the finder of fact sufficient to punish Defendant for its wrongful conduct and to set an example to deter Defendant and others from committing similar acts in the future.

58.     For fraud, Plaintiff is entitled to recover actual and exemplary damages for knowingly fraudulent and malicious representations, along with attorney's fees, interest, and court costs.

59.     For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorneys subscribed to this pleading.  Therefore, under Chapter 38 of

the Texas Civil Practices and Remedies Code, sections 541 and 542 of the Texas Insurance Code, and section 17.50 of the DTPA, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

60.    As required by Rule 47(b) of the Texas Rules of Civil Procedure, Plaintiff's counsel states that the damages sought are in an amount within the jurisdictional limits of this Court. As required by Rule 47(c)(1) of the Texas Rules of Civil Procedure, Plaintiffs' counsel states that Plaintiff seeks only monetary relief of no less than $100,000, but no more than $200,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees. A jury will ultimately determine the monetary relief actually awarded, however. Plaintiff also seeks pre-judgment and post-judgment interest at the highest legal rate.

### REQUESTS FOR DISCLOSURE

61.    Under Texas Rules of Civil Procedure 190 and 194, Plaintiff requests that Defendant disclose, within fifty (50) days from the date this request is served, the information or material described in Rules 190.2(b)(6) and 194.2.

### JURY DEMAND

62.    Plaintiff hereby requests a jury trial for all causes of action alleged herein, tried before a jury consisting of citizens residing in Harris County, Texas. Plaintiff hereby tenders the appropriate jury fee.

### PRAYER

13

Plaintiff prays that Defendant, Metropolitan Lloyds Insurance Company of Texas, be cited and served to appear, and that upon trial hereof, Plaintiff, Dennis Taupo, have and recover from Defendant, Metropolitan Lloyds Insurance Company of Texas, such sums as would reasonably and justly compensate Plaintiff in accordance with the rules of law and procedure, as to actual, consequential, and treble damages under the Texas Insurance Code and Texas Deceptive Trade Practices Act, and all punitive, additional, and exemplary damages, as may be found. In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court expended on Plaintiff's behalf, for pre-judgment and post-judgment interest as allowed by law; and for any other and further relief, at law or in equity, to which Plaintiff, Dennis Taupo, may show himself justly entitled.

Respectfully submitted,

CHAD T. WILSON LAW FIRM PLLC

By: /s/ *Chad T. Wilson*

Chad T. Wilson
Bar No. 24079587
Patrick McGinnis
Bar No. 13631900
455 East Medical Center Blvd, Suite 555
Webster, Texas 77598
Telephone: (832) 415-1432
Facsimile: (281) 940-2137
eService to:
eservice@cwilsonlaw.com
cwilson@cwilsonlaw.com
smengis@cwilsonlaw.com

ATTORNEYS FOR PLAINTIFFS

9/5/2017 4:01 PM
Chris Daniel - District Clerk Harris County
Envelope No. 19239232
By: Kenya Kossie
Filed: 9/5/2017 4:01 PM

CAUSE NO. 2017-53128

| | | |
|---|---|---|
| DENNIS TAUPO, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 333RD JUDICIAL DISTRICT |
| | § | |
| METROPOLITAN LLOYDS INSURANCE | § | |
| COMPANY OF TEXAS, | § | |
| | § | |
| Defendant. | § | HARRIS COUNTY, TEXAS |

## DEFENDANT METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS' ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Metropolitan Lloyds Insurance Company of Texas, ("Defendant"), and files this Original Answer, and in support thereof would respectfully show this Honorable Court the following:

### I. GENERAL DENIAL

Defendant denies all and singular, each and every allegation contained in Plaintiff's Original Petition, and says that the same are not true in whole or in part, and demands strict proof thereof by a preponderance of the evidence.

### II. AFFIRMATIVE DEFENSES

Pleading in the affirmative, pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant alleges the following affirmative defenses:

Defendant asserts that any claims for punitive/exemplary damages are governed and limited by Chapter 41 of the Texas Civil Practice & Remedies Code, including but not limited to, §§ 41.003, 41.004, 41.006, 41.007 and 41.008.

---

DEFENDANT METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS'
ORIGINAL ANSWER - PAGE 1

Defendant further asserts that punitive/exemplary damages cannot be sustained because an award of punitive/exemplary damages under Texas law, subject to no predetermined limit such as a maximum multiple of compensatory damages or a maximum amount on the amount of punitive/exemplary damages that may be imposed, would violate Defendant's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, would violate Defendant's rights not to be subjected to an excessive fine in violation of the Eighth Amendment to the United States Constitution, and would be improper under the common law and public policies of the State of Texas, §§ 3 and 19 of the Texas Constitution. In addition, Defendant asserts that any claims of the Plaintiff for punitive/exemplary damages against Defendant should be proved beyond a reasonable doubt under the Sixth Amendment to the United States Constitution, as opposed to a mere preponderance of the evidence.

Defendant asserts that punitive/exemplary damages are barred by the due process and excessive fines provisions contained within the United States Constitution and Article I, §§ 3 and 19 of the Texas Constitution.

Defendant also asserts that claims for punitive/exemplary damages against Defendant cannot be sustained because an award of punitive/exemplary damages in this case, combined with any prior, contemporaneous, or subsequent judgment against Defendant for punitive/exemplary damages arising out of Defendant's acts or omissions, would constitute impermissible multiple punishments for the same wrong in violation of Defendant's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and would constitute double jeopardy in violation of the common law and statutory law of the State of Texas, and Article I, §§ 3 and 19 of the Texas Constitution.

Pleading further, Defendant specifically pleads that Plaintiff is not entitled to recovery of exemplary damages absent a showing of fraud or malice or a willful act or omission of gross neglect on the part of Defendant, pursuant to Tex. Civ. Prac. & Rem. Code Ch. 41.

Defendant further alleges all of the terms and provisions of the policy of insurance issued to the Plaintiff by Metropolitan Lloyds Insurance Company of Texas, including but not limited to the following policy provisions:

**COVERAGE A - DWELLING**
1. **Dwelling Owners**. If **your** dwelling is a one, two, three or four family dwelling, **we** cover:
    A. the dwelling owned by **you** on the **residence premises**; and
    B. structures, equipment and accessories attached to the dwelling. Swimming pools not fully enclosed within the dwelling are covered under **COVERAGE B - PRIVATE STRUCTURES**.

* * *

**COVERAGE B – PRIVATE STRUCTURES**
At the location of the **residence premises**:
1. **we** cover private structures owned by **you** and separated from the dwelling by clear space; or

* * *

Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be private structures

**We** do not cover private structures:
1. used or held for any **business** or commercial farming purposes; or
2. rented or held for rental to a person not a tenant of the dwelling, unless solely used as a private garage.

This coverage does not apply to land, including land on which the private structures are located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

* * *

**COVERAGE C - PERSONAL PROPERTY**
**Personal Property Covered**
**We** cover personal property owned or used by **you** while it is anywhere in the world.

* * *

## CAUSES OF PROPERTY LOSS

## SECTION I - LOSSES WE COVER
## (COMPREHENSIVE PERILS)

**LOSS DEDUCTIBLE CLAUSE**
**We** will pay only when a loss exceeds the deductible amount shown in the Declarations.
**We** will pay only that part of the loss over such stated deductible.

**COVERAGE A – DWELLING**
**COVERAGE B – PRIVATE STRUCTURES**
**COVERAGE C – PERSONAL PROPERTY**
**We** will pay for sudden and accidental direct physical loss or damage to the property
described in Coverages A, B and C, except as excluded in **SECTION 1 – LOSSES WE
DO NOT COVER.**

## SECTION I - BROAD NAMED PERILS

Whenever Broad Named Perils is referred to in this policy, the following causes of loss
will apply for sudden and accidental direct physical loss.

Under the named perils listed below, **we** do not cover loss or damage, no matter how
caused, to the property which results directly or indirectly from **fungus and mold**. There
is no coverage for loss which, in whole or in part, arises out of, is aggravated by,
contributed to by acts or omissions of persons, or results from **fungus and mold**. This
exclusion applies regardless of whether **fungus and mold** arises from any other cause of
loss, including but not limited to a loss involving water, water damage or discharge,
which may be otherwise covered by this policy, except as granted under **SECTION I -
ADDITIONAL COVERAGES** for **Fungus and Mold Remediation.**

* * *

2.   **Windstorm or Hail**
     **We** do not pay for loss to the interior of a building or to personal property inside,
     caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the
     roof or walls and the wind forces rain, snow, sleet, sand or dust through the
     opening.

* * *

## SECTION I - LOSSES WE DO NOT COVER

* * *

1. **We** do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

\* \* \*

D. **Water damage**, meaning any loss caused by, resulting from, contributed to or aggravated by:

    1. flood, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind;

    2. water or water-borne material which backs up through sewers or drains, or which overflows or is discharged from a sump pump, sump pump well or other system designed to remove subsurface water which is drained from the foundation area; or

    3. water or water-borne material below the surface of the ground, including water which exerts pressure on, or flows, seeps or leaks through any part of a building, sidewalk, foundation, driveway, swimming pool or other structure of water which causes earth movement

This exclusion applies whether or not the water damage is caused by or results from human or animal forces or any act of nature.

However, **we** pay for direct loss that ensues after water damage if caused by fire, theft or explosion and then **we** pay for only the ensuing loss.

Water damage to property described in Coverage C away from a premises or location owned, rented, occupied or controlled by **you** is excluded even if weather conditions contribute in any way to produce the loss.

\* \* \*

H. **Neglect** by **you** to use all reasonable means to save and preserve property at and after the time of a loss.

\* \* \*

2. **We** do not insure under Coverage A and Coverage B for any loss consisting of one or more of the items below. However, **we** pay for any ensuing loss unless the ensuing loss is itself excluded by any other provision in this policy. Further, **we** do not insure for loss described in Exclusion 1. above and Exclusions 3. and 4. below regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss. The items are:

    A. conduct, act, failure to act, or decision of any person, group, organization or governmental body;

B.    defective, inadequate, faulty or unsound:
1.    planning, zoning, development, surveying, siting;
2.    design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
3.    materials used in repair, construction, renovation or remodeling; or
4.    maintenance;

of any property whether on or off the residence **premises**. Property includes land, structures or improvements of any kind; and

C.    weather conditions.

However, this exclusion only applies if weather conditions contribute in any way with an excluded event or cause of loss to produce the loss.

3.    **We** do not cover loss or damage to the property described in Coverage A, Coverage B and Coverage C which results directly or indirectly from any of the following:

A.    wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

\* \* \*

We do pay for any direct loss that follows items A. through H. to property described in Coverages A, B and C not otherwise excluded or excepted in this policy and then we pay for only the ensuing loss. If a covered water loss follows, we will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but we do not cover loss to the plumbing or appliance from which the water escaped.

\* \* \*

Pleading further, Defendant would also assert that Plaintiff has failed to comply with the terms and conditions of the insurance policy issued by Metropolitan Lloyds Insurance Company of Texas to the Plaintiff. Specifically, the subject insurance policy provides as follows:

SECTION I – CONDITIONS

\* \* \*

2.    **What you Must do After a Loss. We** have no obligations to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties and the failure to comply is prejudicial to **us**:

A.  Promptly notify **us** or **our** representative.
B.  Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures.
C.  Cooperate with us in the investigation of a claim.

\* \* \*

E.  At any reasonable time and place **we** designate, and as often as **we** reasonably require:
1.  show **us** the damaged property;
2.  submit to questions concerning the loss under oath while not in the presence of any other person defined as **"you"**, and sign and swear to the answers; and

\* \* \*

7.  **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either **you** or **we** can make a written demand for an appraisal of the loss. Each party will select a competent appraiser and notify the other within 20 days of the appraiser's identity. The two appraisers will select a competent and impartial umpire. If the two appraisers are unable to select an umpire within 15 days, **you** or **we** can request that the choice of an umpire be made by a judge of a court of record in the state where the **residence premises** is located.

The appraisers will separately set the amount of loss determining the full replacement cost and **actual cash value** for each item as needed. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. The written award by two of these three people for any item will set the amount of loss and is binding on **you** and **us** when filed with **us.**

**You** will pay the appraiser selected by **you**. **We** will pay the appraiser selected by **us**. **You** and **we** will split the other expenses of appraisal and the fee of the umpire.

With regard to Appraisal, the term **"you"** applies only to the named insured, including spouse if a resident of the same household.

Pleading further, Plaintiff failed to promptly repair the subject property and based upon information and belief, has not performed necessary repairs to the property.

### III. JURY DEMAND

Defendant demands trial by jury.

---

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Plaintiff take nothing against Defendant, and that Defendant go henceforth without day, with its costs, and for such other and further relief, both at law and in equity, specific and general, to which Defendant may show itself to be justly entitled.

Respectfully submitted,

STACY CONDER ALLEN LLP

By:    Dennis D. Conder
       State Bar No. 04656400

901 Main Street, Suite 6200
Dallas, Texas 75202
(214) 748-5000
(214) 748-1421 FAX
conder@stacyconder.com

ATTORNEYS FOR DEFENDANT
METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 5th day of September 2017, a copy of the foregoing was delivered via certified mail, return receipt requested, to Plaintiff's counsel of record.

Dennis D. Conder

PAN/PLDG/591476.1/001466.17024

---